# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JACK F. OTT, | ) | 1:08cv0150 GSA |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## BACKGROUND

Plaintiff Jack F. Ott ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 24, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed both applications in August 2004, alleging disability since July 26, 2004, due to constant back pain and depression. AR 76-78, 93, 340-343. His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 11-15. ALJ Stephen W. Webster held a hearing on November 17, 2006, and issued an order denying benefits on March 9, 2007. AR 13-23, 369-393. On October 23, 2007, the Appeals Council denied review. AR 8-10.

Hearing Testimony

ALJ Webster held a hearing on November 17, 2006, in Bakersfield, California. Plaintiff appeared and testified. He was represented by Miguel Lopez. AR 369.

Plaintiff testified that he was married and lived with his wife and four children in Delano, California. AR 372-373. Plaintiff has a driver's license and drives when not in great pain. AR 373.

Plaintiff attends to his own personal needs and indicated that he helps out around the house with chores such as dishwashing or laundry, providing he is not required to stand for long periods of time. AR 373-374. His older children perform work in the yard or garden. AR 374.

Plaintiff watches approximately two hours of television per day, reads the bible and other books, and spends little time on the computer. AR 374. Plaintiff testified that he sleeps a lot during the day. AR 376. He attends church services, but becomes uncomfortable sitting for long periods during the sermon. He does not see movies and spends little time around others. AR 374.

In 1982, Plaintiff earned a GED and took some college courses ten to fifteen years prior. His criminal background precluded him from a career in correctional administration, his chosen course of study. AR 375. Plaintiff has not worked for pay since July 26, 2004. AR 375. He receives cash aide and food stamps. AR 375-376.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that he suffers from degenerative disc disease, depression, anxiety, gastritis, esophagitis, irritable bowel syndrome and asthma. He complained of pain in his low back, neck and head, knees, legs and feet. AR 376. The prescribed pain medications relieve the pain "[t]emporarily a little bit." AR 376. Plaintiff testified that he can sit for ten to fifteen minutes, and stand for that same time period, before pain begins. AR 377. He can walk approximately half a block, and the heaviest item he can lift is "[m]aybe a gallon of milk." AR 377.

With specific regard to depression, Plaintiff testified that he feels hopeless and discouraged because there is "no help" and he worries about supporting his family. He feels "real nervous, tingling, and panicky." AR 377.

When questioned by his attorney, Plaintiff testified that the pain in his back is constant. On a scale of one to ten, Plaintiff indicated that at least once a week he experiences pain equivalent to ten on the scale, and that it is at a five or six at its weakest, and a six or seven on average. AR 379-380.

Plaintiff last worked for the City of Delano in the street department. He injured his back while on vacation, was on "12-week family leave or full-week leave," and was advised by a superior that if he did not return "100 percent," he did not need to return to work at all because there was no light duty assignment available. He claims he was forced to resign as a result. AR 380-381.

Plaintiff further testified that at that same time period he was experiencing psychological difficulties, which were exacerbated by his back injury. AR 381. He experienced anxiety attacks, shortness of breath, inability to focus and racing thoughts. AR 382. He become nervous and tense when around others, and avoids attending social functions as a result. He experiences panic attacks every other week on average. AR 382-383. During the attacks he gets hot flashes and tingling in his stomach, hands and legs. AR 383.

Plaintiff claimed that he suffers from constant headaches, waking every morning with a headache. In the event his related medications do not provide relief, he will seek treatment from

the emergency room. On a scale of one to ten, Plaintiff testified that his headache pain was a "ten" and that it was "unbearable." AR 384.

The pain in Plaintiff's feet is "a shooting, tingling pain" that starts in his back and travels down his legs to his feet. AR 386.

Plaintiff also suffers from irritable bowel syndrome and takes medication for his condition. He believes the anti-inflammatory medications he has been prescribed over the past several years may have caused the problem. AR 386.

When asked by his attorney whether he believes he would be able to work even were his back problems to be resolved, Plaintiff testified that he believes his "emotional problems" would keep him from working because he fears working with others, has been attacked on the job, and sexually harassed. AR 386. In fact, Plaintiff testified his emotional problems were his greatest problem at that time. AR 386-387.

Plaintiff's energy is "very low," he has difficulty sleeping through the night, and does not feel as though he could "handle an eight-hour job." AR 385. His doctors have advised him that the future course of treatment of his pain involves "pain management [and] spinal injections." AR 385.

During the hearing, Vocational Expert Thomas Dachelet testified. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and past work experience. This person could sit for six hours, stand for six hours and walk for six hours. He can lift and carry 20 pounds occasionally, 10 pounds frequently. He can occasionally stoop, bend, kneel, crouch and crawl. The VE testified that this person could not perform Plaintiff's past work. AR 387-388. In the second hypothetical, the ALJ asked the VE to assume the same factors, but also that the person must have limited or occasional contact with the public, coworkers and supervisors. Again, the VE testified that this person could not perform Plaintiff's past work, but could perform job such as bagger, garment sorter, and router. AR 388-390.

<u>Medical Record</u>

On August 2, 2004, Plaintiff was seen at the San Joaquin Valley Pulmonary Medical Group ("SJVPMG"). He indicated that he had suffered a back injury a week prior while running

and playing basketball. He felt a pinch. Plaintiff reported having difficulty getting out of bed, with radiating pain in his legs and low back pain. X-rays and an MRI were ordered. Plaintiff was prescribed Toradol, Motrin, and Robaxin. AR 173-174.

On August 9, 2004, an MRI of the lumbar spine was performed at the Truxtun Radiology Medical Group. It was concluded that there was disc degeneration, a 3mm paracentral disc protrusion at L4-L5 encroached on the region of the L5 nerve root, resulting in mild right lateral recess, and proximal foraminal stenosis in association with mild bilateral facet degenerative change. Mild disc degeneration was also noted at L5-S1. AR 171-172.

On August 16, 2004, Plaintiff was seen at SJVPMG, complaining of continued low back pain. A neurosurgeon consult was ordered and Plaintiff was advised to avoid pushing, pulling or lifting over ten pounds, and to avoid repetitive bending or stooping. AR 170.

On or about August 26, 2004, Plaintiff was seen by Charles J. Wrobel, M.D. He complained of low back pain, worsened by most activities. Plaintiff also complained of sharp bilateral leg pain, worsened by coughing, sneezing, sitting and driving. Plaintiff indicated that steroid injections provided only temporary relief. It was noted that Plaintiff has "a history of multiple back injuries." It was Dr. Wrobel's opinion that Plaintiff not be operated on for the very small disc herniation present on the August 9, 2004, MRI, because Plaintiff was working in a fairly demanding physical profession and benefitted from previous positive steroid therapy. Dr. Wrobel recommended continued epidural steroid injections and anti-inflammatories. AR 158-160.

On August 30, 2004, Plaintiff was seen at SJVPMG for a follow up regarding his back injury. He reported continued lower lumbar pain. He was advised to avoid pushing, pulling or lifting over ten pounds, and to avoid repetitive bending or stooping. AR 169.

On September 30, 2004, Plaintiff was again seen at SJVPMG. He complained of pain in upper back and neck, worsened by sitting. AR 168.

On October 19, 2004, Dr. Son T. Dinh administered lumbar epidural steroid injections at L4-L5. AR 163.

1        On October 22, 2004, Plaintiff returned to SJVPMG.  He complained that his pain had worsened after the steroid injection of October 19, 2004.  Pain radiated into both legs.  He was to avoid heaving lifting or bending and work for four weeks, and to follow up with Dr. Wrobel.  AR 167.

         On or about November 4, 2004, Plaintiff was seen by Dr. Wrobel.  He complained of unrelenting pain following epidural steroid injections.  Dr. Wrobel wrote to Dr. Farrer expressing his opinion that perhaps x-ray films of Plaintiff's left hip area would be helpful.  AR 157.

         On November 9, 2004, Dr. Son T. Dinh administered lumbar epidural steroid injections at L4-L5.  AR 162.

         On November 26, 2004, Plaintiff was seen at SJVPMG.  He complained that repeated spinal injections were not helping.  He complained of pain radiating into legs and headaches.  AR 165.

         On November 30, 2004, Drs. Ashok Parmar and Son T. Dinh administered lumbar epidural steroid injections at L4-L5.  AR 161.

         On March 18, 2005, a comprehensive internal medicine examination was conducted by Emanuel Dozier, M.D., in Bakersfield, California.  AR 182-187.  Dr. Dozier noted that Plaintiff reported a "two year history of intermittent back pain with a one year history of contact unrelenting back pain in the lumbar area radiating to both lower extremities . . .."  AR 182.  Further, it was noted that Plaintiff reported numbness, weakness, tingling and occasional leg buckling, and increased pain with the actions of bending, twisting, stooping, standing longer than ten minutes, sitting longer than ten minutes and walking more than twenty-five feet.  He reported pain at an eight on scale of one to ten.  Plaintiff reported that he received "fair relief" from prescribed pain medications.  Plaintiff also complained of recurrent headaches, and spasm and stiffness in the neck. The pain is exacerbated by lifting more than ten pounds, and reported diminished range of motion in the head and arms.  AR 182-183.  At the time of the examination, Plaintiff was prescribed the following medications: Vicodin, Celebrex, Naprosyn, Zantac and Lotronex. AR 183.  Dr. Dozier's examination notes include the fact that Plaintiff walked without exhibiting "signs of pain, ataxia, or shortness of breath."  AR 183.  He sat during the interview

without discomfort and did not require any assistance transferring to and from the examination table. AR 183. The physical examination noted "diffuse tenderness over the entire upper and lower back," "no significant evidence of paravertebral muscle spasms in the upper back, but . . . spasms and straightening of the lumbar curve in the lower back." AR 183. Dr. Dozier's findings included chronic cervical myofascial pain syndrome with chronic mechanical low back pain. Plaintiff would have postural restrictions involving frequent bending, stooping, crouching, pushing and pulling, and manipulative restrictions on frequent reaching above the shoulders. Dr. Dozier found Plaintiff capable of lifting twenty-five pounds occasionally and ten pounds frequently. Finally, the doctor found Plaintiff capable of standing, walking and sitting for a six hour period. AR 186.

On April 11, 2005, Medical Consultant L. Bobba, M.D., analyzed Plaintiff's medical history and determined that Plaintiff was "partially credible" because "[h]e appears to describe greater limitations than would be considered reasonable based on the objective medical evidence in [the] file." AR 190. The doctor determined that Plaintiff is capable of light exertion, occasional pushing/pulling, stooping and crouching, should not work in excessive cold, climb ladders, ropes or scaffolds, or work on an incline. AR 188-191.

On March 31, May 23, June 4 and 18, 2005, Plaintiff was treated and released at Delano Regional Medical Center for back pain and headaches, as well as bronchial symptoms. AR 202-219.

An October 19, 2005, report prepared by Juliane C. Tran, M.D., notes that Plaintiff was complaining of chronic neck pain that radiates to his bilateral shoulders and arms, and chronic back pain that radiates to bilateral lower extremities. Pain medications were discussed and Plaintiff was to follow up in three months. AR 239.

On December 9, 2005, Plaintiff was seen at SJVPMG for continued complaints of low back pain. AR 266.

On March 9, 2006, Drs. Kevin Trinh and Son T. Dinh administered lumbar epidural steroid injection C7-T1. AR 235.

On March 24, 2006, Plaintiff was seen at the Delano Regional Medical Center for complaints of headaches, nausea, neck and back pain. AR 331-338.

An August 11, 2006, SJVPMG note reflects Plaintiff was seeing a psychiatrist for anxiety and depression. A notation references chronic low back pain. AR 261.

On September 11, 12, 14, 15 and 30, and October 3, 2006, Plaintiff was treated and released at Delano Regional Medical Center for abdominal pain, nausea and diarrhea, headaches, degenerative disc disease, anxiety and depression. AR 270-290, 298-323.

A radiology report dated September 11, 2006, from Delano Regional Medical Center indicates minor arthritic changes at C4 and C5. AR 324.

A CT of Plaintiff's abdomen performed on September 15, 2006, at the Delano Regional Medical Center suggested mild colonic diverticulosis, yet was otherwise normal. AR 291-292.

On October 6, 2006, records of SJVPMG indicate that Plaintiff was complaining of a loss of appetite and abdominal pain. AR 258-259.

An office visit report of November 13, 2006, from SJVPMG reflects that Plaintiff's complaints regarding abdominal pain had improved somewhat. AR 257.

Between November 2005 and November 2006, Plaintiff was treated at the Kern County Mental Health clinic. He was diagnosed with depression. The records indicate that Plaintiff's appetite, gait, appearance and affect were normal. AR 241-256.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease and depressive disorder NOS. AR 18.

Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a significant number of jobs. He could lift and carry ten (10) pounds frequently and twenty (20) pounds occasionally, and stand, walk and sit for six hours out of an 8-hour workday, could occasionally climb, stoop, kneel, crouch or crawl, and have limited to occasional contact with the public, coworkers and supervisors. AR 19.

      Given this RFC, the ALJ found that Plaintiff could not return to his past work as a warehouse manager, municipal maintenance worker or salvage laborer. AR 21. Nevertheless, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 23.

## SCOPE OF REVIEW

      Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

      In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

1  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
2  Cir. 1990).
3     In an effort to achieve uniformity of decisions, the Commissioner has promulgated
4  regulations which contain, inter alia, a five-step sequential disability evaluation process. 20
5  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ
6  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of
7  his disability; (2) has an impairment or a combination of impairments that is considered "severe"
8  based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an
9  impairment or combination of impairments which meets or equals one of the impairments set
10 forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work as a
11 warehouse manager, municipal maintenance worker or salvage laborer; yet (5) retained the RFC
12 to perform a wide range of light work. AR 25-30.
13    Here, Plaintiff argues that he disagrees with the ALJ's findings because he "was
14 discriminated [against] based on [his] age, education, and past work experience no matter what
15 level of pain [he] was in." He claims he cannot occasionally lift twenty pounds, nor frequently
16 lift ten pounds, nor can he sit, stand or walk for six hours in an eight-hour work day. He claims
17 that under "Social Security Disability rules you must have the required work credits and your
18 health problems must: keep you from doing any kind of substantial work and last or [be]
19 expected to last for at least 12 months in a row, or result in death. I do have the required work
20 credits and my conditions have lasted longer than 12 months."

## DISCUSSION

22    In response to this Court's order of November 19, 2008, wherein Plaintiff was directed to
23 provide a separate statement of each legal claim "stated in terms of the insufficiency of the
24 evidence," Plaintiff's brief is conclusory for it merely states that he applied for Social Security
25 benefits and was subsequently denied benefits. Plaintiff's brief fails to identify what specific
26 evidence that the ALJ may have relied upon that was insufficient to support his findings, nor did

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

Plaintiff identify any other legal error the ALJ may have made.  Thus, the Court is making it's determination based upon the information Plaintiff has asserted, the arguments in opposition asserted by Defendant, and other law the Court deemed relevant to this determination.

A.      <u>Mere Diagnosis</u>

The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

The ALJ found Plaintiff suffered from degenerative disc disease and depressive disorder NOS.  He noted however that there was conflict in the medical record regarding the diagnosis for Plaintiff's back pain, for Plaintiff had also been diagnosed with chronic mechanical back pain. AR 18-19.  It was also noted that in spite of Plaintiff's "longstanding depression with sad and anxious mood, he has had an adequate appetite" and the "mental status exam" was "most normal." AR 19.  The ALJ also noted that the record established medically determinable impairments of gastro-esophageal reflux disease (GERD), irritable bowel syndrome (IBS), and asthma.  AR 19.

Plaintiff's medical records certainly provide evidence of degenerative disc disease in his lumbar spine and depression.  However, these diagnoses alone will not suffice.  The impact of these diagnoses however, alone or in combination are insufficient.  The ALJ noted that "[n]o physician has opined [so] . . . and the state agency program physicians opined that it does not." AR 19.  Thus, to the degree that Plaintiff argues that a diagnosis of degenerative disc disease and/or depression are sufficient to warrant his entitlement to Social Security disability and supplemental income benefits, he is mistaken.

The Ninth Circuit Court of Appeals, in *Key v. Heckler*, has stated:

> Our scope of review of disability determinations is limited: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .." 42 U.S.C. § 405(g) (1982); *Chavies v. Finch*, 443 F.2d 356, 357 (9th Cir.1971); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.1971). Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir.1981).  Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982).

*Key v. Heckler*, 754 F.2d at 1549. Here, the record is more than adequate to support the ALJ's conclusion, and as a result, the finding cannot be overturned. It must be further noted that the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ noted in his findings that he gave "significant weight to the opinion of the consulting internist" because his opinion was "supported by his clinical findings as well as those of the other treating and examining sources of the record." AR 21. *See Tonapetyan v. Haler*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion may constitute substantial evidence because it is based on examiner's independent findings and observations).

Numerous medical tests performed concluded that Plaintiff was, for the most part, within accepted or normal ranges for the symptom complained of. AR 20. Plaintiff exhibits a normal gain, requires no special accommodation or assistive device, and the medical records establish that prescription medications effectively controlled Plaintiff's symptoms. AR 20-21.

In sum, there is evidence in the record supported by substantial evidence to support the ALJ's finding that Plaintiff is not disabled.

B.    Credibility Analysis

The ALJ is required to make specific findings assessing the credibility of a plaintiff's subjective complaints. *Cequerra v. Secretary of HHS,* 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996), quoting *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*., citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The findings

must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Once a claimant produces medical evidence of an underlying impairment likely to cause the alleged pain, the ALJ may not discredit the allegations of the severity of the pain solely because the evidence does not support plaintiff's statements. *Lester*, 81 F.3d at 834, citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). The Court turns to address these findings.

Here, ALJ Webster made specific findings regarding Plaintiff's credibility. AR 19-21. He identified with particularity the evidence he relied upon in concluding that the objective evidence did not support Plaintiff's "disabling limitations to the degree alleged." For example, the ALJ noted that the examinations of Plaintiff's complaints are "mostly within normal limits" and that "[d]espite his allegedly severe back and leg pain, he has a normal gait and does not require any assistive devices to ambulate," and that "[i]n contrast to the allegations . . of disabling fatigue and weakness, he does not exhibit any significant atrophy, loss of strength, or difficulty moving, that are indicative of severe and disabling pain." AR 20.

In evaluating the credibility of the symptom testimony, it appears that the ALJ did consider all of the factors set out in SSR 96-7P and 20 C.F.R. §§ 404.1529c(4)(i)(vii), 416.929(c)(4)(i)(vii). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), and *Bunnell*, 947 F.2d at 346. The SSR directs the ALJ to:

> Investigate all avenues presented that relate to subjective complaints, including claimant's prior work record and information and observations by treating physicians and third parties regarding such matters as
>
> 1. The claimant's daily activities.
>
> 2. The location, duration, frequency, and intensity of claimant's symptoms or pain;
>
> 3. Precipitating factors and aggravating factors;
>
> 4. Type, dosage, effectiveness, and adverse side effects of any pain medication;

5. Treatment, other than medication, for pain relief;

6. Any reasons used by the claimant to relieve the pain or symptoms; and

7. Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Additionally, the ALJ , and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *see Drouin v. Sullivan,* 966 F.2d 1255, 1258-59 (9th Cir. 1992) (ALJ's observations during the hearing, along with other evidence, constitutes substantial evidence); *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility).

If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d at 600. The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).

Here, ALJ Webster made a specific finding that Plaintiff was able to spend a substantial part of his day engaged in pursuits that are transferable to a work setting. Plaintiff can perform light household chores, cook, attend church services, and care and provide transportation for his four children. AR 21. The ALJ cited Exhibit 2E (AR 96-103) in support of his finding, and the exhibit includes more specific information, including the fact that Plaintiff does the "laundry, ironing, dishes, [and empties] the trash." AR 98. Plaintiff also does the shopping for "household items, groceries." AR 99.

In sum, the ALJ is entitled to resolve questions of credibility and conflicts in the testimony. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Here, the ALJ's credibility determination was supported by substantial evidence, and was sufficiently specific to permit the

1  Court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v.*
2  *Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

3  C.     RFC Finding

4       To the degree Plaintiff challenges the ALJ's findings regarding Residual Functional
5  Capacity ("RFC"), an RFC is an assessment of an individual's ability to do sustained work-
6  related physical and mental activities in a work setting on a regular and continuing basis of eight
7  hours a day, for five days a week, or equivalent work schedule. SSR 96-8p. The RFC
8  assessment considers only functional limitations and restrictions which result from an
9  individual's medically determinable impairment or combination of impairments. SSR 96-8p.
10 "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record
11 including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain,
12 that are reasonably attributed to a medically determinable impairment.' " *Robbins v. Social*
13 *Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006).

14      Here, ALJ Webster did consider all relevant evidence in the record in reaching his RFC
15 finding. He specifically stated that he "considered all symptoms and the extent to which these
16 symptoms can reasonably be accepted as consistent with the objective medical evidence," as well
17 as opinion evidence in accordance with the Code of Federal Regulations. The ALJ found that
18 Plaintiff's medically determinable impairments could be reasonably expected to produce the
19 symptoms complained of, but that Plaintiff's "statements concerning the intensity, persistence
20 and limiting effects" were "not entirely credible." AR 19-20.

21      The ALJ addressed with particularity which medical reports, records and examinations he
22 relied upon for each of Plaintiff's complaints in order to reach his determination. AR 20-21.
23 The ALJ noted that he assigned significant weight to the opinion of consulting internist Emanuel
24 Dozier, M.D., because Dr. Dozier's opinion was supported by his clinical findings, as well as
25 those of the other treating physicians. AR 21. *Tonapetyan v. Haler*, 242 F.3d at 1149
26 (consultive examiner's opinion may constitute substantial evidence because it is based on
27 examiner's independent findings and observations).
28

Therefore, the ALJ consider all relevant evidence in the record and the RFC finding was supported by substantial evidence and is free of legal error.

D.      Bias

To the degree Plaintiff's complaint that he was "discriminated based on my age, education, and past work experience no matter what level of pain [he] was in" can be interpreted to be a claim of bias against the ALJ, nothing in the record supports this assertion.

ALJs and other similar quasi-judicial administrative officers are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Id*. The burden of making such a showing rests with the party asserting bias. *Id*. at 196. Because Plaintiff has failed to present any evidence that the ALJ was biased, he has obviously failed to meet this burden.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Jack F. Ott.

IT IS SO ORDERED.

Dated:   **March 4, 2009**          /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE